UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA ANN P., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 5:20-CV-00734 KES <br><br> MEMORANDUM OPINION AND ORDER |

# I.

# BACKGROUND

In April 2016, Virginia Ann P. ("Plaintiff") applied for Title II and Title XVI disability benefits alleging an onset date of May 1, 2015, when she was 45 years old and stopped working as an in-home care giver. Administrative Record ("AR") 329–30, 459–60, 469, 643. On November 7, 2018, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified along with a vocational expert ("VE") and a medical expert ("ME"). AR 263–308. On January 10, 2019, the ALJ issued an unfavorable decision. AR 50-64.

The ALJ found that Plaintiff's "obesity; degenerative disc disease in the cervical, thoracic and lumbar regions; status post-removal of benign spinal tumor; thyroid disorder[;] and osteoarthritis of the left knee" were severe impairments. AR 53. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work. AR 56. As relevant here, the ALJ found that Plaintiff "may wear braces on her bilateral feet and ankles and left knee. She can occasionally ambulate over uneven terrain and may use a four-point cane held in either hand while ambulating." AR 56.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including telephone information clerk, charge account clerk, and bench hand. AR 62–63. The ALJ concluded that Plaintiff was not disabled. AR 64.

## II.
## ISSUES PRESENTED

<u>Issue One</u>: Whether the ALJ erred in finding that Plaintiff did not meet Listing 1.02(A). (Dkt. 23, Joint Stipulation ["JS"] at 4, 10.)

<u>Issue Two</u>: Whether the ALJ erred in discounting Plaintiff's subjective symptom testimony. (<u>Id</u>. at 4.)

## III.
## DISCUSSION

**A.    <u>ISSUE ONE: Listing 1.02(A).</u>**

    **1.    The Requirements of Listing 1.02(A).**

At the third step of the five-step process, the ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is presumed disabled and benefits are awarded. <u>Bowen v. Yuckert</u>, 482 U.S. 137,

141 (U.S. 1987); Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995, as amended (Apr. 9, 1996). A claimant has the burden to show that her condition meets or equals an impairment set forth in the Listing. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). To *meet* a listed impairment, a claimant must demonstrate that she meets each characteristic of a listed impairment relevant to her claim and must have every finding specified in the Listing. Id. at 1099; see 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To *equal* a listed impairment, a claimant must establish "symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)).

Plaintiff contends that she met Listing 1.02(A), and "is not asserting equivalence." (JS at 10.) Listing 1.02 is one of the Listings describing impairments of the musculoskeletal system. It addresses major dysfunction of a joint. To meet Listing 1.02(A), "Major dysfunction of a joint(s) (due to any cause)," Plaintiff must satisfy all of the following four conditions:

> **[1]** gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis[1]), instability and **[2]** chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and **[3]** findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:

---

[1] Based on the Court's research, "subluxation" refers to an incomplete or partial dislocation of a joint or organ; "contracture" refers to a shortening or hardening of a muscle or joint; "fibrous ankylosis" is a fibrous connective tissue process which results in decreased range of motion, with symptoms including osseous tissue fusing two bones together, reducing mobility; and "joint instability" happens when tissues—such as muscles, ligaments, and bones—weaken.

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in **[4]** an inability to ambulate effectively, as defined in 1.00B2b ….

20 C.F.R. part 404, subpt. P, app. 1, § 1.02.

The "inability to ambulate effectively" is defined as follows:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. …
>
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00(B)(2)(b)(1)–(2). Thus, the regulations provide a "general definition" in Listing 1.00(B)(2)(b)(1) following by several examples of situations that may satisfy that definition in Listing 1.00(B)(2)(b)(2).

### 2. Relevant Administrative Proceedings.

John D. Sabow, M.D., testified as a ME at Plaintiff's hearing. AR 280–95. He is board certified in neurology and board eligible in internal medicine. AR 280; see id. 1103–05. Prior to his testimony, Dr. Sabow reviewed the medical evidence, and at the hearing, he questioned Plaintiff at length to elicit further information. AR 281–88. He testified that Plaintiff "is on chronic use of opioids" and "you don't do that" to treat low back pain, "[i]t's just not done." AR 289. He pointed out that "we don't have a recent MRI of the low back" and concluded, "I would insist that I would get a good MRI of that low back, a recent one, before I would agree to recommend a Listing." AR 290. Dr. Sabo specifically ruled out Listing 1.04(A) (disorders of the spine), because Plaintiff's description of her back pain was inconsistent with herniated disc compression. AR 290. More generally, he testified that after removal of the benign spinal tumor, Plaintiff did not need to use a wheelchair or a two-handed assistive device (like a walker) to ambulate. AR 291. Because of knee pain, he opined that there was "medical indication … for at least a cane held in one hand." AR 292. Finally, he ruled out Listing 11.02(D) (dyscognitive seizures) addressing Plaintiff's migraine headaches. AR 293. At the conclusion of Dr. Sabo's testimony, Plaintiff's counsel declined to ask the ME any questions. AR 294.

The ALJ considered whether Plaintiff's medically determinable physical impairments, individually or in combination, met or equaled any of the Listings. AR 55–56. The ALJ discussed Listings 1.04 and 11.08 (spinal cord disorders) but not Listing 1.02. AR 55. The ALJ concluded that Plaintiff did not satisfy Listing 1.04 due to the lack of evidence of "lumbar stenosis with an inability to ambulate

effectively." AR 55.[2]  In a letter brief to the Appeals Council, Plaintiff's counsel vaguely criticized the ALJ "in finding that [Plaintiff] could ambulate effectively as defined in the Commissioner's listing," but did not argue that Plaintiff met or equaled the severity of Listing 1.02.  AR 518–19.

### 3. Analysis of Claimed Error.

Plaintiff argues that the ALJ failed to consider Listing 1.02(A), and such error was not harmless, because evidence suggests that Plaintiff meets Listing 1.02(A).  (JS at 5, 8.)  Defendant responds that this claim was waived because Plaintiff's counsel at the hearing did not raise Listing 1.02(A), and Plaintiff's new counsel on appeal similarly failed to identify Listing 1.02(A) as a potentially applicable Listing to the Appeals Council.  (JS at 8–9, citing AR 262–308, 425–28, and 518–19.)  Indeed, if the medical evidence "require[d] at least consideration of Listing 1.02," as Plaintiff argues (JS at 8), then counsel should have questioned the ME at the hearing and not waited until now to raise the issue.  See Austin v. Saul, 840 F. App'x 899, 901 (9th Cir. 2020) ("Because Austin, during the administrative proceedings, 'did not offer any theory, plausible or otherwise, as to how [her] impairments combined to equal a list[ed] impairment,' the ALJ was 'not required,' in his ruling, 'to discuss the combined effects of [her] impairments or compare them to any listing in an equivalency determination.'") (quoting Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)); Solorzano v. Astrue, No. ED CV 11-369-PJW, 2012 WL 84527, at *6, 2012 U.S. Dist. LEXIS 4059, at *17 (C.D. Cal. Jan. 10, 2012) ("Counsel … have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed.").  See generally Ford v. Saul, 950 F.3d 1141, 1157 (9th Cir. 2020)

---

[2] The ALJ also generally reviewed whether Plaintiff satisfied the requirements of Listings 4.00 (cardiac dysfunction), 5.00 (thyroid-related weight loss), 11.00 (hypertensive cerebrovascular accidents), or 12.00 (cognitive limitations, mood disorders, and anxiety) and concluded that she did not.  AR 55.

("Because the ALJ did not have an obligation to discuss medical equivalency sua sponte, the ALJ did not err in failing to do so."). Nevertheless, the Court need not reach the issue of waiver, because Plaintiff has failed to identify evidence that she satisfied Listing 1.02(A). See Tackett, 180 F.3d at 1098 (establishing claimant's burden to demonstrate that her condition meets a Listing).

Regarding the first three requirements of Listing 1.02(A), Plaintiff argues that there is evidence of **[2]** (i.e., chronic joint pain and stiffness with limitation of motion) because she complained of left knee pain starting in 2018 and used a cane or wheelchair to ambulate. (JS at 6.) Plaintiff argues that there is evidence of **[3]** (i.e., medically acceptable imaging showing joint space narrowing) because a June 2018 MRI demonstrated "osteoarthritis of the medial and patellofemoral compartments with areas of mild and moderate partial-thickness chondrosis"[3] and a "small joint effusion [swelling]." (Id., citing AR 794.) However, she does not thoroughly explain how the cited medical evidence satisfies the requirements of Listing 1.02(A). See Ford, 950 F.3d at 1148 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (citation omitted).

As for **[1]**, the regulations do not define a "gross anatomical deformity." Based on the examples provided in Listing 1.02 ("e.g., subluxation, contracture, bony or fibrous ankylosis of the affected joint(s)") and dictionary definitions, the Court understands "gross anatomical deformity" to refer to a body part (such as a bone, muscle, or joint) that is misshaped in some significant way. See Igo v.

---

[3] Chondrosis is a general term that refers to cartilage deterioration. "Partial-thickness" chondrosis describes deterioration less severe than "full-thickness" chondrosis. Osteoarthritis of the knee is "a wear-and-tear condition that occurs when the cartilage in your knee deteriorates with use and age." See https://www.mayoclinic.org/diseases-conditions/knee-pain/symptoms-causes/syc-20350849 (last visited April 21, 2021).

Colvin, 839 F.3d 724, 729 (8th Cir. 2016) ("Because the regulations do not define 'gross anatomical deformity,' we must give the term its 'ordinary, contemporary, common meaning.'") (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). Plaintiff's briefing does not identify what "gross anatomical deformity" she contends affects her left knee and how it is comparable to the examples of deformities described in Listing 1.02. Many claimants have degenerative changes to their knees sufficient to support a diagnosis of osteoarthritis, but they do not satisfy Listing 1.02(A). See, e.g., Daniel S. v. Berryhill, No. 5:18-cv-01504-KES, 2019 U.S. Dist. LEXIS 71949, at *7–8, 2019 WL 1903384, at *3 (C.D. Cal. Apr. 26, 2019); Veniale v. Colvin, No. CV 13-2464-DFM, 2014 U.S. Dist. LEXIS 39487, at *4–7, 2014 WL 1246135, at *2 (C.D. Cal. Mar. 24, 2014); Courie v. Astrue, No. EDCV 12-00087-MLG, 2012 U.S. Dist. LEXIS 107038, at *10–11, 2012 WL 3112007, at *4 (C.D. Cal. July 31, 2012); Haugen v. Astrue, No. 10-CV-258, 2011 U.S. Dist. LEXIS 75202, at *6–14, 2011 WL 2710185, at *3–5 (D. Idaho July 12, 2011).

Plaintiff also fails to demonstrate that she satisfied element **[4]** of Listing 1.02(A), the inability to ambulate effectively—an element that the ALJ considered because it is also an element of Listing 1.04. According to Plaintiff, "the ALJ's finding of fact appears to satisfy the listing," because the ALJ found that Plaintiff "can only ambulate occasionally over uneven surfaces and needs a cane …." (JS at 7 [emphasis omitted].) Plaintiff further argues that the mere fact that she does not need to use a walker or two canes does not preclude a finding of ineffective ambulation. (Id. at 7–8.)

While use of a two-handed assistive device is not necessary to establish ineffective ambulation, the use of a one-handed assistive device, alone and without something more, is not enough. See 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00(B)(2)(b)(1)–(2). Here, Plaintiff suggests that she cannot ambulate effectively because she has "the inability to walk a block at a reasonable pace on

8

rough or uneven surfaces." (JS at 9–10 [citation omitted].) But the ALJ found that Plaintiff *could* walk on uneven surfaces in a work setting up to one-third of the workday. AR 56; see Dictionary of Occupational Titles, app. C (4th ed. 1991), 1991 WL 688702 (defining "occasionally" as "up to 1/3 of the time"). Thus, the ALJ's RFC restriction does not support a finding of ineffective ambulation. Moreno v. Astrue, 444 F. App'x 163, 164 (9th Cir. 2011) (holding RFC determination limiting the claimant to walking on even terrain did not establish inability to ambulate effectively under the Listings); Perez v. Astrue, 831 F. Supp. 2d 1168, 1176 (C.D. Cal. 2011) (holding a medical opinion that the claimant should not walk on uneven terrain did not prove an inability to ambulate effectively); see also Porteous v. Saul, No. 19-35550, —F. App'x—, 2021 WL 1174670, at *1, 2021 U.S. App. LEXIS 9065, at *1–2 (9th Cir. Mar. 29, 2021) ("Although Porteous uses a cane, she does not assert that she is unable to walk without the use of a device that limits both upper extremities, as required by the relevant regulations.").

Plaintiff also argues that she "cannot carry out routine daily ambulatory activities." (JS at 7 [emphasis omitted].) In support, she points out that "her fiancé takes her everywhere" and "her daughter or son does the cleaning or cooking." (Id.) Even before Plaintiff stopped working, however, Plaintiff did not drive. AR 272. The fact that her fiancé takes her everywhere, therefore, does not inform how well she can walk. Her testimony that her children do all the cooking and cleaning is testimony specifically discredited by the ALJ as inconsistent with what she told healthcare providers, as discussed *infra* under Issue Two. See AR 872 (December 7, 2017 treatment note stating "she has been able to cook again and tolerate standing while cooking"), 865 (February 15, 2018 treatment note stating "Patient reports she is getting better and is able to remain standing for 25 mins for cooking and she can walk longer"), 864 (Plaintiff reported she could do "light duty" household chores).

While Plaintiff alleges that her disabling knee pain only developed in "early 2018" such that earlier records do not reflect the degree of functional impairment it caused (JS at 7), Plaintiff does not discuss how her most recent medical records, many of which were submitted to the Appeals Council, show an inability to ambulate effectively. See Porteous, 2021 WL 1174670, at *2, 2021 U.S. App. LEXIS 9065, at *5 ("We consider both the record before the ALJ and any additional material submitted to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence.") (citation omitted). In August 2018, Plaintiff could "stand and walk without an assistive device." AR 901. In October, she "ambulates without an assistive device." AR 132. In November 2018, the Arthritis Medical Clinic recorded normal bone density findings and did not discuss any issues with ambulation or Plaintiff's left knee. AR 144, 233–35. Later that same month, Plaintiff's treating physician noted that she "stands/walks without an assistive device." AR 128. A physical examination of Plaintiff's left knee in February 2019 (i.e., just after the ALJ's decision) noted "no deformities" and an "essentially full" range of motion with "no gross motor deficits." AR 19–20. X-rays of Plaintiff's left knee did not show joint space narrowing; they showed "no noted … arthritic changes." AR 20; see also AR 242–43 (March 19, 2019 exam noting no swelling and full range of motion in bilateral extremities). Her chief complaint in February and March 2019 was right foot pain, not left knee pain. AR 202, 205. In June and July 2019, Plaintiff had a "normal gait [and was] able to stand without difficulty." AR 95, 104. In September 2019, Plaintiff was observed with an "antalgic gait," but she gave no indication that she needed an assistive device to ambulate. AR 88–89.

Plaintiff was referred for physical therapy ("PT") in February 2019, but she had not started it by April. AR 24. When she did start PT in May 2019, she told her therapist that she "ambulates with a WBQC [wide-based quad cane] most of the time" and could walk "1 block." AR 27. Her therapist assigned a "home exercise

program" and assessed "good rehab potential." AR 29. After a few PT sessions, Plaintiff reported "sig less pain in knee." AR 40.

None of this is consistent with knee joint dysfunction causing "an extreme limitation of the ability to walk" or the degree of functional limitation generally caused by a Listing-level impairment. See generally Reed-Goss v. Astrue, 291 F. App'x 100, 101 (9th Cir. 2008) ("Reed-Goss cannot establish that she suffered from an 'inability to ambulate effectively' under listings 1.02(A) and 1.03, because she testified that she could walk without using a cane on good days, and that she only used the cane 'for protection' in case her knee gave way.").

In sum, any error by the ALJ in failing to consider Listing 1.02(A) was harmless, because Plaintiff has not identified medical evidence sufficient to show that she meets the severity of Listing 1.02(A).

**B.      ISSUE TWO: Plaintiff's Subjective Testimony.**

**1.      The ALJ's Evaluation of Plaintiff's Testimony.**

The ALJ summarized Plaintiff's testimony. AR 56–57. The ALJ noted that Plaintiff testified she has used a wheelchair daily since 2015 and always uses it when away from home for more than 15 minutes.[4] AR 56, 270–71. Plaintiff used a wheelchair at the November 2018 hearing.[5] AR 270. Arthritis pain in her left knee

---

[4] Plaintiff's benign spinal tumor was discovered in May 2015 after she noticed difficulty walking. AR 594 (May 13, 2015 MRI). She underwent surgery to remove it in on May 20, 2015. AR 619. By May 26, she showed "significant improvement" and was discharged to physical rehabilitation. AR 624. Plaintiff agreed she had "really good improvement" after surgery. AR 285–86. By September 2015, a straight leg-raising test was negative bilaterally. AR 605. By January 2016, Plaintiff reported that she could walk "with her AFO splints and a cane" and had "no pain"; surgeon Dr. Mesiwala "reassured [her] that she is making a remarkable recovery." AR 274. By May 2016, she had "marked improvement in her ability to walk" and rated her pain only "2/10." AR 723.

[5] Three weeks later, Plaintiff "stands/walks without an assistive device." AR 128. She did not use a wheelchair to attend PT in May 2019. AR 40 (describing Plaintiff "walking into therapy session").

11

was so severe that she could hardly get out of bed. AR 57, 273, 276. She could not bend over to pick up something she dropped. AR 277–78. Once a week, she had migraine headaches that caused her to stay in bed for two or three days. AR 274. She estimated that she could sit or stand for only five minutes before needing to change position due to pain.[6] AR 57, 278–79. On days when she got out of bed, she would lay down to elevate her legs due to pain for an hour at least five times per day. AR 57, 279–80. While Plaintiff acknowledged that she had improved after surgery to remove her spinal tumor, she believed that post-surgical physical therapy had caused her arthritis (diagnosed when she was 16) to flare up and cause back pain. AR 288.

After reciting the two-step process, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 56–57. The ALJ then explained that there was a lack of "objective medical evidence" to support limitations beyond those in the RFC. AR 59. Among other evidence, the ALJ cited multiple physical examinations with mild or "generally normal" findings. AR 59. The ALJ also noted that Plaintiff had "marked improvement in her ability to walk within one year of her spinal surgery, and the most recent medical evidence demonstrates that [she] is able to stand and walk without an assistive device." AR 59–60 (citing AR 719 [April 13, 2016 progress note stating "ambulates with bilateral AFOs and motor function for lower extremities "intact"]; AR 782 [May 18, 2017 progress note stating "she continues to walk with an AFO on her left leg" and "she is doing

---

[6] In contrast, in a February 2018 low back pain disability questionnaire, she indicated that she could not sit for more than an hour and did ***not*** check the alternative response "Pain prevents me from sitting for more than 10 minutes." AR 863. She could do "light duty" household chores. AR 864.

12

well"]; AR 901 [August 9, 2018 progress note stating "can stand and walk without an assistive device"]).

The ALJ also found that Plaintiff's activities of daily living were inconsistent with her symptom testimony. AR 60. The ALJ cited Plaintiff's reports that she can "swim with assistance getting in and out of the pool, attend to her personal hygiene with help getting in and out of the shower and with caring for her hair and shop and picking up her medication with rides from her fiancé." AR 60 (citing hearing testimony at AR 275, 279). Plaintiff also "reported being able to stand long enough to prepare a meal to her physical therapist." AR 60 (citing AR 872 [December 7, 2017 treatment note stating "she has been able to cook again and tolerate standing while cooking"] and AR 865 [February 15, 2018 treatment note stating "Patient reports she is getting better and is able to remain standing for 25 mins for cooking and she can walk longer"]).

### 2. The ALJ Gave Clear and Convincing Reasons Supported by Substantial Evidence for Discounting Plaintiff's Testimony.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

As set forth below, the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony about the intensity, persistence, and limiting effects of her pain and other symptoms.

First, Plaintiff's subjective statements were inconsistent with the objective medical evidence. AR 57–60. Inconsistencies with the objective medical evidence cannot be the *sole* ground for rejecting a claimant's subjective testimony. Nevertheless, inconsistencies are factors that the ALJ *may consider* when evaluating subjective symptom testimony. Burch, 400 F.3d at 681; see Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *5, 2016 SSR LEXIS 4, at *11 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). The ALJ was permitted to consider if the very extreme physical limitations claimed by Plaintiff even years after her tumor-removal surgery were consistent with the objective medical evidence. Imaging studies revealed only mild degenerative changes. AR 57, 59, 595–96, 698, 710–11, 794. As discussed above, musculoskeletal and neurological examinations indicated generally normal findings, including intact motor functions, grossly normal range of motion, and negative bilateral straight-leg-raising tests. AR 59, 601, 605, 638, 709–10, 718–19, 726, 1084–85, 1113–14.

Second, the ALJ properly considered internal inconsistencies in Plaintiff's symptom reporting. In evaluating a claimant's subjective symptoms, "an ALJ may engage in ordinary techniques of credibility evaluation, such as … inconsistencies in claimant's testimony." Burch, 400 F.3d at 680; see 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the

14

evidence ...."); Molina v. Astrue, 674 F.3d 1104, 1112 ("In evaluating the claimant's testimony, ... the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct ...."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020). The medical records cited by the ALJ indicate that what Plaintiff told medical sources about her functional limitations was less extreme than her hearing testimony. For example, Plaintiff told the ALJ in November 2018 that she could only stand for about five minutes and needed a cane to walk inside her house and a wheelchair whenever she left the house. AR 270–71, 278–79. In contrast, in February 2018, she told her physical therapist that she could stand for 25 minutes to cook. AR 865; see also AR 864 (reporting in February 2018 that she could stand for up to a half hour). The ALJ cited records from 2016, 2017, and 2018 demonstrating that Plaintiff could ambulate using AFOs but without a cane or wheelchair. AR 59–60 (citing AR 719, 782, 901); see also AR 863 (In February 2018, Plaintiff reported that "pain prevents me from walking more than ¼ mile," but she did *not* check the alternative response "I can walk only with crutches or a cane."). Even after hearing Plaintiff's testimony, the ME opined that she did not need to use a wheelchair or a two-handed assistive device (like a walker) to ambulate. AR 291.

Third, Plaintiff's allegations were inconsistent with her acknowledged activities of daily living. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014). Nevertheless, an ALJ properly may consider the claimant's daily activities in evaluating symptom testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). If a claimant's level of activity is inconsistent with her asserted limitations, it has a

bearing on whether to credit her subjective statements. Garrison, 759 F.3d at 1016. Here, Plaintiff told the ALJ that she tried to walk a little and swim while at home, but "other than that, I don't do anything." AR 275. When asked who did the cooking, she responded, "Either my daughter or my oldest son, because he's my IHSS care provider." AR 276. The ALJ's finding of inconsistency between Plaintiff's testimony and reported activities (i.e., telling her physical therapist twice that she could stand enough to cook at AR 865 and 872) is supported by substantial evidence, and it provides another clear and convincing reason to discount Plaintiff's testimony. AR 60.

Finally, the ALJ noted that Plaintiff showed signs of improvement and her symptoms were aided by medications. AR 57–59. An ALJ may consider a good response to treatment when evaluating subjective testimony. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ may consider "evidence suggesting that [the claimant] responded well to treatment" in evaluating the claimant's subjective symptoms). In May 2015, Plaintiff showed "significant improvement" following removal of her spinal cord tumor. AR 57, 624. A year later, Plaintiff reported a "marked improvement" in her ability to walk and rated her pain as only 2/10. AR 58, 59, 723. In July 2016, Plaintiff noted that bilateral facet injections at L4-L5 and L5-S1 "helped to reduce her back pains by 75%." AR 58, 756. In May 2017, Plaintiff acknowledged that she was "doing quite well" and was "pleased" with the results of her spinal cord surgery. AR 58, 782.

Furthermore, the ALJ did not completely reject Plaintiff's testimony. AR 57, 59, 62. Indeed, based partly on her subjective statements, the ALJ limited Plaintiff to less than a full range of sedentary exertion. AR 56, 59. In sum, the ALJ offered

16

clear and convincing reasons, supported by substantial evidence, for only partially crediting Plaintiff's subjective symptom testimony.

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner shall be AFFIRMED. Judgment shall be entered consistent with this order.

DATED: May 11, 2021

*/s/ Karen E. Scott*
KAREN E. SCOTT
United States Magistrate Judge